IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

ERIE DIVISION

| | | |
|---|---|---|
| GEORGE G. ELLIOTT, | ) | 1:21-CV-00262-RAL |
| Petitioner | ) | |
| v. | ) | RICHARD A. LANZILLO<br>Chief United States Magistrate Judge |
| ATTORNEY GENERAL, et al., | ) | MEMORANDUM OPINION ON<br>PETITION FOR HABEAS CORPUS |
| Respondents | ) | |

George G. Elliott, an inmate confined at the State Correctional Institution at Laurel Highlands, initiated this action by filing a *pro se* Petition for Writ of Habeas Corpus by a Person in State Custody pursuant to 28 U.S.C. § 2254. ECF No. 4. In 1977, Elliott, then 17 years old, was convicted of first-degree murder and arson in the Court of Common Pleas of Crawford County. *Commonwealth v. Elliott*, 2018 WL 3764983, at *1 (Pa. Super. Ct. Aug. 9, 2018). He was sentenced to life without parole. *Id.* Following the issuance of the United States Supreme Court's decisions in *Miller v. Alabama*, 567 U.S. 460 (2012), and *Montgomery v. Louisiana*, 577 U.S. 190 (2016), the trial court resentenced Elliott on the murder charge to a term of fifty years to life. *Id.*

In the instant habeas petition, Elliott challenges his conviction by way of two interrelated grounds for relief. Because each lacks merit, Elliott's Petition will be denied.[1] And, because

[1] The parties have consented to the exercise of plenary jurisdiction by a United States Magistrate Judge, as authorized by 28 U.S.C. § 636(c).

reasonable jurists would not find this disposition debatable, a certificate of appealability will also be denied.

I. Factual Background

The Superior Court of Pennsylvania set forth the factual background of this case as follows:

> On June 16, 1977, a jury convicted [Elliott] of first-degree murder and arson for crimes he committed when he was seventeen years of age. On March 6, 1978, the trial court sentenced [Elliott] to life imprisonment for the murder conviction and a five to ten year concurrent sentence for the arson conviction. By per curiam order entered June 20, 1979, this Court affirmed [Elliott's] judgment of sentence. *Commonwealth v. Elliott*, 417A.2d 780 (Pa. Super. 1979). On October 4, 1979, our Supreme Court denied [Elliott's] allocatur petition.
>
> *Commonwealth v. Elliott*, 34 A.3d 235 (Pa. Super. 2011) (unpublished memorandum) (affirming the denial of relief sought pursuant to the Post-Conviction Relief Act (PCRA), 42 Pa.C.S. §§ 9541-9546). The United States Supreme Court subsequently decided *Miller* in 2012, and Montgomery in 2016.
>
> In *Miller*, supra, the Supreme Court of the United States held that "mandatory life without parole for those under the age of 18 at the time of their crimes violates the Eighth Amendment's prohibition on 'cruel and unusual punishments.'" *Id.*, 567 U.S. at 465. Under *Miller*, only where a court finds that the juvenile homicide defendant is permanently incorrigible, irreparably corrupt, or irretrievably depraved is the court permitted to impose a LWOP sentence upon the juvenile. *Miller*, at 471, 473, 479-480 (citations omitted). Thereafter, in *Montgomery*, the United States Supreme Court held that the *Miller* decision applies retroactively to cases on collateral review. *Id.* at 732-737. Following *Miller* and *Montgomery*, our Supreme Court issued *Commonwealth v. Batts*, 163 A.3d 410 (Pa. 2017) (Batts II), which addressed the procedural requirements for sentencing a juvenile homicide defendant.
> On June 28, 2016, based on *Montgomery*, Elliott obtained PCRA relief in the form of resentencing. On July 12, 2017, the trial court resentenced Elliott, as stated above.

*Elliott*, 2018 WL 3764983 at **1-2. Elliott filed a post-sentence motion which the trial court denied. On appeal from that order, he raised the following ground for relief:

1) *Miller* invalidated the first- and second-degree murder statutes for juveniles.

2) His sentence of 50 years to life without the possibility of parole was a *de facto* life sentence that could only be issued if the court found "that the juvenile is one of the rare and uncommon juveniles who is permanently incorrigible, irreparably corrupt or irretrievably depraved."

3) The trial court abused its discretion in sentencing him to 50-years to life.

4) The trial court improperly used his age and his IQ as aggravating rather than mitigating factors.

5) The sentencing guidelines are unconstitutional under *Miller*.

*Id.* at *2. The Superior Court rejected each claim, holding, *inter alia*, that Elliott's sentence was not a *de facto* life sentence because he would become eligible for parole at age 70 and that the trial court had properly considered Elliott's age and other attendant characteristics in determining his sentence. *Id.* at *4 (quoting *Commonwealth v. Bebout*, 186 A.3d 462 (Pa. Super. Ct. 2018)).

Elliott appealed, and the Pennsylvania Supreme Court held the case in abeyance pending its decision in *Commonwealth v. Felder*, 269 A.3d 1232 (Pa. 2022). In *Felder*, the Court addressed whether "a sentence of 50 years to life imposed upon a juvenile constitute[d] a *de facto* life sentence requiring the sentencing court, as mandated by this Court in [*Commonwealth v. Batts*, 163 A.3d 410 (Pa. 2017) ("*Batts II*")] to first find permanent incorrigibility, irreparable corruption or irretrievable depravity beyond a reasonable doubt." *Id.* at 1241. For reasons discussed more fully below, the Court determined that, "as long as the sentence was the product of a discretionary sentencing system that included consideration of the juvenile's youth, the Eighth Amendment is satisfied." *Id.* at 1245-46. Because *Felder* was dispositive as to the issues raised in Elliott's appeal, the Court denied his Petition for Allowance of Appeal. *Commonwealth v. Elliott*, 276 A.3d 1179 (Pa. 2022).

In the instant Petition, filed pursuant to 28 U.S.C. § 2254, Elliott raises the following grounds for relief:

Ground One: The government violated Elliott's Eighth Amendment rights under *Miller v. Alabama* when it repeatedly referred to him at resentencing as being "only 3 months under 18" at the time of the crime, suggesting that he was "a[n] adult and not a juvenile."

Ground Two: The government violated Elliott's right to equal protection by resentencing him to 50 years incarceration despite "90%-95% of the juvenile lifers" resentenced under *Miller* receiving sentences in the range of 20-35 years to life.

ECF No. 4. Respondents having submitted a Response to the Petition [ECF No. 28], this matter is ripe for adjudication.

III. Applicable Legal Standards

Habeas corpus is an "'extraordinary remedy' reserved for defendants who were 'grievously wronged' by the criminal proceedings." *Dunn v. Colleran*, 247 F.3d 450, 468 (3d Cir. 2001) (quoting *Calderon v. Coleman*, 525 U.S. 141, 146 (1998)). In enacting the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Congress "significantly limited the federal court's power to grant a writ of habeas corpus." *Tolbert v. Ferguson*, 2019 WL 4677357 at *2 (E.D. Pa. Aug. 8, 2019). Under § 2254, a district court may entertain an application for a writ of habeas corpus filed by a person in state custody "only on the ground that he is in custody in violation of the Constitution or laws of the United States." 28 U.S.C. § 2254(a). The United States Court of Appeals for the Third Circuit has emphasized the heavy burden habeas petitioners bear, noting that "even 'clear error'" by the state courts "will not suffice." *Orie v. Sec. Pa. Dept. of Corrections*, 940 F. 3d 845, 850 (3d Cir. 2019). Rather, the

state court must be wrong "beyond any possibility for fair-minded disagreement." *Id.* (citations and some internal quotations omitted).

In adjudicating a § 2254 petition, federal courts must give considerable deference to determinations made by state trial and appellate courts. *See Renico v. Lett*, 599 U.S. 766, 772 (2010). Thus, if a claim presented in a § 2254 petition has been adjudicated on the merits in state court proceedings, habeas relief cannot be granted unless:

> the adjudication of the claim (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254 (d). It is the habeas petitioner's burden to show that the state court's decision was contrary to or an unreasonable application of United States Supreme Court precedent and/or an unreasonable determination of the facts. *Moreno v. Ferguson*, 2019 WL 4192459, at *3 (W.D. Pa. Sept. 4, 2019).

If a claim was not adjudicated on the merits in state court, the Court "reviews legal questions and mixed questions of law and fact de novo." *Bennett v. Superintendent Graterford SCI*, 886 F.3d 268, 282 (3d Cir. 2018) (citing *Cone v. Bell*, 556 U.S. 449, 472 (2009)). However, the factual determinations of the state courts are still presumed correct, rebuttable only upon a showing of clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1) ("In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct."); *Bennett*, 886 F.3d at 282.

IV. Analysis and Discussion

A. Timeliness

Before the Court can address the merits of Elliott's petition, it must first decide whether it was timely filed. *Romansky v. Superintendent Green SCI*, 933 F.3d 293, 298 (3d Cir. 2019). Pursuant to AEDPA, a state prisoner must file his federal habeas claims within one year of the date his judgment of sentence became final. 28 U.S.C. § 2244(d)(1)(A). Because Elliott sought direct review from the Pennsylvania Supreme Court, his sentence became final for purposes of the one-year PCRA statute of limitations and the one-year federal habeas statute of limitations on April 19, 2022, the date on which the Pennsylvania Supreme Court denied his Petition for Allowance of Appeal. *See* 28 U.S.C. § 2244(d)(1)(A) (the one-year federal limitations period generally begins on the date the petitioner's judgment of sentence became final "by the conclusion of direct review or the expiration of the time for seeking such review"). The instant § 2254 petition, filed before that date, was clearly timely.

B. Exhaustion and Procedural Default

As a general matter, a federal district court may not consider the merits of a habeas petition unless the petitioner has "exhausted the remedies available" in state court. *See* 28 U.S.C. § 2254(b)(1)(A); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999). A petitioner satisfies the exhaustion requirement "only if [he or she] can show that [they] fairly presented the federal claim at each level of the established state-court system for review." *Holloway v. Horn*, 355 F.3d 707, 714 (3d Cir. 2004). The purpose of the exhaustion requirement is to "give the state courts a full and fair opportunity to resolve federal constitutional claims before those claims are presented to the federal courts … by invoking one complete round of the State's established appellate review process." *O'Sullivan*, 526 U.S. at 845.

In order to "fairly present" a claim for exhaustion purposes, the petitioner must advance the claim's "factual and legal substance to the state courts in a manner that puts them on notice that a federal claim is being asserted." *Bennett v. Superintendent Graterford SCI*, 886 F.3d 268, 280 (3d Cir. 2018) (quoting *McCandless v. Vaughn*, 172 F.3d 255, 261 (3d Cir. 1999)). A petitioner may exhaust a federal claim either by raising it on direct appeal or presenting it in post-conviction PCRA proceedings. *O'Sullivan*, 526 U.S. at 845. Either way, the petitioner must present his federal constitutional claims "to each level of the state courts empowered to hear those claims." *Id.* at 847 ("requiring state prisoners [in order to fully exhaust their claims] to file petitions for discretionary review when that review is part of the ordinary appellate review procedure in the State"). "Once a petitioner's federal claims have been fairly presented to the state's highest court, the exhaustion requirement is satisfied." *Stoss v. Estock*, 2019 WL 2160464, at *3 (M.D. Pa. May 17, 2019) (citing *Castille v. Peoples*, 489 U.S. 346, 350 (1989)).

An important corollary to the exhaustion requirement is the doctrine of procedural default. "Just as in those cases in which a state prisoner fails to exhaust state remedies, a habeas petitioner who has failed to meet the State's procedural requirements for presenting his federal claims has deprived the state courts of an opportunity to address" the merits of those claims "in the first instance." *Coleman v. Thompson*, 501 U.S. 722, 731-32 (1991). Procedural default intertwines with exhaustion in the following manner: when a claim has never been "'fairly presented' to the state courts, but state procedural rules bar the applicant from seeking further relief in state courts, the exhaustion requirement is satisfied" due to the lack of available state process, but the claims "are considered to be procedurally defaulted." *McKenzie v. Tice*, 2020 WL 1330668, at *5 (M.D. Pa. Mar. 23, 2020) (quoting *McCandless v. Vaughn*, 172 F.3d 255, 261 (3d Cir. 1999)). Such claims may not ordinarily be reviewed by a federal court. *Davila v.*

*Davis*, 137 S. Ct. 2058, 2064 (2017) ("[A] federal court may not review federal claims that were procedurally defaulted in state court—that is, claims that the state court denied based on an adequate and independent state procedural rule.") (citations omitted).

Several caveats exist. First, "[a] state procedural rule can preclude federal habeas corpus review" only when the state rule is "independent of the federal question [presented] and adequate to support the judgment." *McKenzie*, 2020 WL 1330668, at *5 (quoting *Leyva v. Williams*, 504 F.3d 357, 365 (3d Cir. 2007)). A rule is "independent" if it is not "'so interwoven with federal law' that it cannot be said to be independent of the merits of a petitioner's federal claims." *Id.* (quoting *Johnson v. Pinchak*, 392 F.3d 551, 557 (3d Cir. 2004)). A rule is "adequate" if it was "firmly established, readily ascertainable, and regularly followed at the time of the purported default." *Levya*, 504 F.3d at 366 (quoting *Szuchon v. Lehman*, 273 F.3d 299, 372 (3d Cir. 2001)).

Second, a petitioner can overcome procedural default, thereby permitting federal court review, if the petitioner can demonstrate either: (1) "cause" for the default and "actual prejudice" as a result of the alleged violation of federal law; or (2) that the failure to consider the claims will result in a "fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750. To demonstrate cause and prejudice, the petitioner must show some objective factor external to the defense that impeded counsel's efforts to comply with a state procedural rule. *Slutzker v. Johnson*, 393 F.3d 373, 381 (3d Cir. 2004) (quoting *Murray v. Carrier*, 477 U.S. 478, 488 (1986)). To demonstrate a fundamental miscarriage of justice, a habeas petitioner must typically show actual innocence. *Schlup v. Delo*, 513 U.S. 298, 324-26 (1995).

Applying these principles, the Court concludes that Elliott's second ground for relief has been procedurally defaulted. Elliott asserts that the trial court violated his right to equal

protection by resentencing him to a longer sentence than most of the "juvenile lifers" resentenced under *Miller*. This claim was not raised during any of Elliott's state court proceedings. As a result, he has not fairly presented this claim to the state courts for one full round of review. *See, e.g.*, *Lambert v. Blackwell*, 387 F.3d 210, 233-34 (3d Cir. 2004) (explaining that, for habeas claims in Pennsylvania to be exhausted, the claims must have been presented to both the PCRA court and the Superior Court). And, because Elliott is now time-barred from pursuing that appeal, his second ground for relief is procedurally defaulted.

Elliott has neither demonstrated cause and prejudice nor advanced any compelling argument to establish that a fundamental miscarriage of justice will occur if this Court does not consider this claim. It is well-settled that the requisite "cause" to excuse a procedural default must be based on "some objective factor external to the defense." *Coleman*, 501 U.S. at 750. Examples include: (1) the factual or legal basis for a claim was not reasonably available, (2) some interference by state officials made compliance with the state procedural rules impracticable, or (3) there was ineffective assistance of counsel from attorney error. *Id.* None of these applies. Moreover, even if cause could be shown, Elliott has not made any attempt to demonstrate prejudice. In the absence of any such showing, Elliott's ground for relief cannot be reviewed by this Court.

C. Merits

Elliott's remaining ground for relief is rooted in his contention that the Commonwealth violated *Miller* and *Montgomery* by improperly referring to his age – only "3 months under 18" – throughout his sentencing hearing. ECF No. 24 at 1-2. He appears to suggest that, under *Miller* and *Montgomery*, the trial court was not permitted to consider his age so long as he was under 18 when he committed the crime:

> Under *Miller & Montgomery* states the individual has to be **under 18**. It doesn't matter if they were 1 day, 1 week, 1 month, and/or 3 months under 19. Just under 18, and I was under the age of 18.

ECF No. 24 at 2 (emphasis in original).

The Superior Court addressed this claim on appeal, noting that age is one of the factors that the trial court is required to consider under both state and federal law in rendering a sentence. *See Elliott*, 2018 WL 3764983, at *5 (citing 18 Pa.C.S. § 1102.1(d)). This Court reviews the Superior Court's decision through AEDPA's deferential lens. Thus, to obtain relief, Elliott must show that the state courts' adjudication of this claim was contrary to or an unreasonable application of clearly established federal law or based on an unreasonable determination of the facts. *See* 28 U.S.C. § 2254(d).

The "clearly established Federal law" applicable to Elliott's claim consists of the United States Supreme Court's decisions in *Miller*, *Montgomery*, and *Jones*. In *Miller*, the Supreme Court held that "the Eighth Amendment forbids a sentencing scheme that mandates life in prison without possibility of parole for juvenile offenders" because such schemes "prevent the sentencer from taking account [such] central considerations" as the offender's youth. *Miller*, 567 U.S. at 479. In reaching its decision, the Court affirmed the principle that children are "constitutionally different from adults for purposes of sentencing" because they have "diminished culpability and greater prospects for reform." *Id.* at 471. By making "youth (and all that accompanies it) irrelevant to the imposition of the harshest prison sentence," mandatory life sentences for juveniles "pose[] too great a risk of disproportionate punishment." *Id.* at 479. Although the Court "did not foreclose" the possibility that a juvenile homicide crime might warrant a life sentence, the Court's decision "require[s] [sentencing judges] to take into account how children

are different, and how those differences counsel against irrevocably sentencing them to a lifetime in prison." *Id.* at 480.

In *Montgomery*, the Supreme Court held that the *Miller* decision announced a new substantive rule of constitutional law that applied retroactively on collateral review. *See Montgomery*, 577 U.S. at 212. Several years later, the Supreme Court reaffirmed *Miller* and *Montgomery* in *Jones*, reiterating that mandatory life sentences without parole for juvenile offenders violate the Eighth Amendment, but clarifying that "sentencing schemes which allow the discretionary imposition of life sentences after consideration of the juvenile homicide offender's youth and attendant characteristics pass constitutional muster without the need for a separate factual finding of permanent incorrigibility." *Commonwealth v. Street*, 2022 WL 2794345, at *2 (Pa. Super. Ct. July 18, 2022) (citing *Jones*, 593 U.S. at 101).

None of these decisions support Elliott's argument that the trial court violated clearly established federal law by taking his age into account during sentencing. *Miller's* holding is straightforward: "We therefore hold that the Eighth Amendment forbids a sentencing scheme that mandates life in prison without possibility of parole for juvenile offenders." 567 at 479; *Bey v. Clark*, 2021 WL 3478210, at *5 (E.D. Pa. May 27, 2021). Consistent with this holding, Elliott was resentenced pursuant to a sentencing scheme that, rather than imposing a mandatory sentence, plainly permitted the sentencing court to consider his youth and other attendant characteristics. Indeed, the record indicates that the trial court did exercise that discretion, observing that Elliott's age – just shy of eighteen – did not mitigate heavily against a lengthy sentence. *See Elliott*, 2018 WL 3764983, at *5 ("In this regard, we note the trial court found Elliott was 'just about three and one half months short of being 18 years of age [at the time of the murder, s]o I think that goes against you,' and had an above average IQ."). Because the

sentencing court considered the mitigating qualities of Elliott's youth and attendant characteristics in rendering and affirming his sentence, the Superior Court's determination that Elliott's sentence did not violate *Miller* was neither contrary to nor an unreasonable application of clearly established federal law. *See, e.g., United States v. Grant*, 9 F.4th 186, 197 (3d Cir. 2021) (sentence of 65 years without parole for a juvenile homicide offender did not violate the Constitution where "the court [had] discretion to impose a sentence of less than [life without parole] on a juvenile homicide offender, and exercise[d] that discretion by considering the offender's youth"). Accordingly, Elliott's claim is without merit and no relief is warranted.

V. Certificate of Appealability

A certificate of appealability should be issued only when a petitioner has made a substantial showing of a denial of a constitutional right. 28 U.S.C. § 2254(c)(2). Where the district court has rejected a constitutional claim on its merits, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Here, the Court concludes that jurists of reason would not find it debatable whether Elliott's Petition should be denied for the reasons given herein. Accordingly, a certificate of appealability will be denied.

VI. Conclusion

For the reasons set forth herein, Elliott's Petition is denied, and no certificate of appealability should issue. An appropriate order follows.

DATED this 14th day of June, 2024.

BY THE COURT:

RICHARD A. LANZILLO
CHIEF UNITED STATES MAGISTRATE JUDGE